UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Fred BISHOP, Defendant-Appellant.

No. 26083.

United States Court of Appeals, Ninth Circuit.

Jan. 5, 1971.

Rehearing Denied Jan. 29, 1971.

Lawrence Ollason (argued), Tucson, Ariz., for appellant.

Ann Bowen (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., Tucson, Ariz., for appellee.

Before HAMLIN, BROWNING and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

Robert Fred Bishop, appellant herein, was charged in an indictment filed in the United States District Court for the District of Arizona, along with one Bob Maynard, his co-defendant, with conspiracy to violate 21 U.S.C. § 176a.[1] After a jury trial, appellant was found guilty and sentenced to prison. This court has jurisdiction of his appeal under 28 U.S. C. § 1291.

Appellant's main contention is that there was insufficient evidence to justify his conviction. We disagree.

The evidence viewed in the light most favorable to the government[2] showed, *inter alia,* the following facts. On November 21, 1969, appellant and co-defendant Maynard registered at the Bowman Hotel in Nogales, Arizona. This hotel is three blocks from the border of Mexico. The registration card signed by one of the two read, "Ralph Johnson and party, Columbus, Ohio." They requested separate rooms, but on the following day they moved into the same room and stayed there until November 26. Appellant used the name "Johnson" and Maynard used the name "Harris" during their stay at the hotel. Between November 21 and November 26, they were seen together on several occasions and two days after their arrival both men were observed to get out of a Mexican taxicab which was licensed to deposit passengers on the American side of the border but not to pick up passengers upon that side. Mrs. Celaya, a resident of Nogales, testified that appellant and co-defendant Maynard entered her store (November 26) and purchased some soda pop and potato chips. She said the two men then stepped outside her store. Maynard stayed on the steps and Bishop moved a short distance away to the corner of the building. She observed Bishop walking toward the hill where the border was only a short distance away. She saw a Mexican boy about 20 years old come down the hill toward her store from the border, place a suitcase on the wall nearby, and run up the hill immediately. Bishop then whistled to Maynard, who left the porch, and both went where the suitcase was, and Bishop picked up the suitcase. Both men then left, walking very fast away from her store; Bishop was carrying the suitcase. Mrs. Celaya then telephoned the police, told them what had occurred, and gave a description to the police. She also testified that when the men were about a block away from her store she saw them separate. One went one way and the other toward the border. It was between 5:00 and 6:00 p. m. when she telephoned the police. A sergeant of police testified that when the police got Mrs. Celaya's call he was instructed by the Department to pick up a patrol car and look for someone fitting the description which had been given to him. Approximately five minutes later he saw the co-defendant Maynard, stopped him and asked for identification. Maynard said he had none. Maynard fitted the description given to the officer over the radio and was carrying a suitcase. The officer asked Maynard if he would open the suitcase so he could look inside it. Maynard replied that he didn't want to open it right there, but that if the officer went up to his room at the Bowman Hotel with him, he would open it there; and if there was anything in it that shouldn't be there, then he could make a deal where the officer could forget the whole thing and, as the officer said,

1. § 176a. Smuggling of marihuana; * * *.

* * * [W]hoever, knowingly, with intent to defraud the United States, * * * receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned * * *.

2. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

"make it worth * * * [his] while." The officer then opened the suitcase and saw what appeared to be two bricks of marihuana. Later testimony established that there were 15 bricks of marihuana in the suitcase. Maynard was then placed under arrest, advised as to his rights and taken to the police station. The clerk at the Bowman Hotel testified that about 7:00 p. m. on the same day Bishop "came in pretty quick" and asked if his friend had come in yet. The clerk replied, "No," and Bishop then asked whether there had been any phone calls. On receiving a negative reply Bishop went upstairs, remained about an hour, and "came back down pretty quick," and started to check out. The regular checkout time was 12:00 noon. The clerk also testified that earlier that day Bishop had received several phone calls from a man speaking English with a Spanish accent, with what sounded like a bar and Mexican music in the background, and that the caller refused to leave a number. After the arrest of Maynard, one of the officers went to the hotel with a photograph of the defendant Maynard. The clerk identified Maynard as being one of the occupants of room 216, which was also occupied by Bishop. While the officer was around the hotel, Bishop approached the desk and the desk clerk indicated that he was the other occupant of room 216.

We think there was ample evidence to permit the jury to find that appellant was guilty of conspiring to violate 21 U.S.C. § 176a. Appellant points to certain claimed discrepancies in the testimony concerning the description of the two men as given by Mrs. Celaya to the police. However, these were matters for the jury to consider in determining the credibility of the witnesses.

Appellant also contends that when he was arrested and searched he was not given his constitutional rights. A short answer to this contention is that the trial judge granted a motion to suppress the evidence concerning the arrest of Bishop and the results of the search of his room and no statements of the appellant were offered or received in evidence, and nothing found in any search of appellant or of his room was offered or received in evidence. He thus suffered no prejudice.[3]

Judgment affirmed.

---

3. See United States v. DeCatur, 430 F.2d 365, 367 (9 Cir. 1970).